# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Bky. No. 09-40476 (RJK)<br>Chapter 11 Case |
| Brooklyn Center Leased Housing Assoc LP. | |
| Debtor. | |

## NOTICE OF EXPEDITED HEARING AND MOTION (1) TO DISMISS CASE; (2) EXCUSING STATE COURT APPOINTED RECEIVER FROM COMPLYING WITH 11 U.S.C. § 543(a)-(c); AND (3) FOR RELIEF FROM STAY

### NOTICE OF MOTION

1.       US Bank National Association ("US Bank"), as Trustee under that certain Indenture of Trust, dated June 1, 1995, between US Bank and the City of Brooklyn Center, Minnesota, relating to the City's Multifamily Housing Refunding Revenue Bonds (Four Courts Apartments Project), Series 1995A (the "Indenture") is a secured creditor of the Debtor in the above-captioned case, and hereby files this Motion: (1) to Dismiss Case; (2) to Excuse Compliance with 11 U.S.C. § 543(a)-(c); and (3) for Relief from Stay (the "Motion").

2.       The Court will hold a hearing on this Motion on Wednesday, February 4, 2009, at 2:00 p.m. before the Honorable Robert J. Kressel, in Courtroom 8 West, U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415.

3.       Based upon the expedited nature of this Motion, any response to this motion may be filed and delivered not later than the date and time of the hearing.  UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

## JURISDICTION

4.      This Court has jurisdiction of this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and Federal Rule of Bankruptcy Procedure 5005.  This is a core proceeding.  Brooklyn Center Leased Housing Assoc LP (the "Debtor") filed its petition for relief under Chapter 11 of Title 11 of the United States Code on January 29, 2009.  The case is now pending in this Court.

5.      This Motion arises under 11 U.S.C. §§ 301, 362, and 543; and Federal Rules of Bankruptcy Procedure 1008, 4001, and 9014; and Local Rules 1008-1 and 9006-1(e).

## STATEMENT OF FACTS

6.      US Bank is the Trustee under the terms of that certain Indenture of Trust, dated as of June 1, 1995 ("Indenture"), between the City of Brooklyn Center (the "City") and First Trust National Association (now known as U.S. Bank National Association), relating to the City of Brooklyn Center, Minnesota Multifamily Housing Refunding Revenue Bonds (Four Court Apartments Project) Series 1995A in the original principal amount of $7,300,000 (the "Bonds").  As of January 29, 2009 (the "Petition Date"), the Bonds are outstanding in the current principal amount of $6,055,000, with accrued interest in the amount of $72,896.33, plus costs and expenses (including attorneys' fees). [1]

## The Property

7.      The Debtor is the owner of an apartment complex located in the City, commonly known as "Center Pointe Apartments" and legally described as Tract B, Registered Land Survey No. 1186, Hennepin County, Minnesota ("Property").

---

[1]      Due to the necessity of filing this Motion on an expedited basis, additional supporting affidavits will be filed subsequent to the filing of the Motion.

8. The general partner of the Debtor is Brooklyn Center Housing Associates, LLC, a Minnesota limited liability company and the sole member of Brooklyn Center Leased Housing Associates, LLC is Brooklyn Center Housing, LLC, a Minnesota limited liability company. The Chief Manager and sole member of Brooklyn Center Housing, LLC is Hyder Jaweed ("Jaweed"). Asgher Ali (aka Asgher Jaweed) ("Ali") is the brother of Jaweed.

9. The Property includes 252 residential units and serves primarily low-income tenants.

### The Loan Transaction

10. Pursuant to the terms of the Indenture, the City pledged and assigned to the US Bank, and granted a security interest to US Bank in: (i) that certain Loan Agreement, dated as of June 1, 1995 (the "Loan Agreement"), between the City and the Debtor, except for certain rights and amounts payable retained by the City, (ii) the funds and accounts held by the US Bank pursuant to the terms of the Indenture, and (iii) other security delivered to the US Bank to provide for the punctual payment of the Bonds.

11. The City loaned $7,300,000.00 to Debtor (the "Loan") under the terms and conditions of the Loan Agreement. Pursuant to the terms of the Loan Agreement, Debtor, inter alia, unconditionally promised to repay to the City the sum of $7,300,000.00, plus interest. The City funded the Loan by issuing and selling the Bonds.

12. To secure repayment of the Loan, Debtor executed a First Mortgage, Security Agreement and Fixture Financing Statement with Collateral Assignment of Rents and Leases, dated as of June 1, 1995 (the "Mortgage"), in favor of the City. Pursuant to the terms of the Mortgage, Debtor granted to the City a first-priority security interest and mortgage against the

real property located in the County of Hennepin, State of Minnesota, and described in the Mortgage, together with all buildings, improvements, fixtures and other items of real and personal property located thereon. The Mortgage also includes provisions for the assignment of rents and leases under which Debtor assigned to the City, inter alia, all of its right, title and interest in any then-existing or future leases and renewals, extensions or modifications thereof together with all of the rents, issues, income or profits pertaining to the Property.

13.     The Mortgage was filed for record in the Office of the Hennepin County Registrar of Titles as Document No. 2612805 on June 2, 1995.

14.     The City executed an Assignment of Mortgage Agreement, dated as of June 1, 1995 (the "Assignment"), under which the City assigned, inter alia, all of its right, title, and interest in the Mortgage to US Bank.

15.     The Assignment was filed for record in the Office of the Hennepin County Registrar of Titles as Document No. 2612806 on June 2, 1995.

16.     In connection with the substitution of LaSalle Bank National Association ("LaSalle Bank"), as trustee under the Indenture, US Bank assigned its interest in the Mortgage to LaSalle Bank pursuant to an Assignment of Real Estate Documents, dated May 12, 2005, which was filed for record in the office of the Hennepin County Registrar of Titles as Document No. 4179819 on October 24, 2005 ("LaSalle Assignment").

17.     As of July 1, 2008, LaSalle Bank's interest in the Mortgage was reassigned back to US Bank pursuant to an Assignment of Real Estate Documents, dated July 1, 2008, which was

filed for record in the office of the Hennepin County Registrar of Titles as Document No. 4513072 on July 14, 2008 ("U.S. Bank Assignment").

18.     Under the Mortgage and Loan Agreement (collectively, the "Loan Documents"), Debtor agreed to pay when due monthly installments of principal and interest, as well as monthly reserves for real estate taxes, insurance and further repair and replacement costs.  Payments of principal and interest equal to one-sixth of the interest and principal due on the next semi-annual Bond payment date, together with deposits to a repair and replacement reserve fund are due on the first day of each month.  A deposit equal to one-twelfth of the annual amount due for taxes and insurance is due on the fifteenth day of each month.    Under the terms of the Loan Documents, Debtor also agreed to pay the reasonable fees and expenses of the Trustee, and to provide certain periodic financial reports to the Trustee.   Debtor also agreed, under the terms of the Mortgage, to keep the Property free from encumbrances.

## Events of Default

19.     The Loan Agreement defines an "Event of Default" to include, among other things, (i) the failure to make any payment of principal or interest when due under the Loan Agreement, or before the next monthly payment is due, (ii) the failure to observe and perform any other covenant, condition or agreement to be observed and performed under the Loan Agreement for a period of thirty (30) days following written notice and request that such failure be remedied, and (iii) an Event of Default under the Mortgage.

20.     Debtor defaulted under the terms of the Loan Agreement and Mortgage for failure to make full and timely payments of principal and interest together with tax, insurance and replacement reserves due on September 1, 2007, October 1, 2007, December 1 and 15, 2007,

January 1 and 15, 2008, February 1 and 15, 2008, March 1 and 15, 2008, April 1 and 15, 2008, May 1 and 15, 2008, June 1 and 15, 2008, July 1 and 15, 2008, August 1 and 15, 2008 and September 1 and 15, 2008. The Debtor has failed to make any payments since. Debtor has continued to fail to deliver the financial reports as required in the Loan Documents following demand therefor. US Bank made demands upon Debtor for payment in full of all amounts due and owing, and a request for overdue financial reports, pursuant to notices of default. Debtor has periodically made only partial payments of the outstanding amounts due to US Bank under the terms of the Loan Agreement.

21. Based on the Debtor's failure to make full and timely payments of the amounts due under the terms of the Loan Agreement and Mortgage, as per the terms of the Loan Agreement, US Bank withdrew funds from the Reserve Fund to pay its fees and expenses. In the notice of default dated January 18, 2008, US Bank notified Debtor of the withdrawal from the Reserve Fund, and demanded that the Debtor replenish the Reserve Fund as required under the terms of the Loan Agreement. In the notice of default dated May 5, 2008, US Bank notified Debtor that the deficiency in the Reserve Fund as of April 30, 2008, was $39,065.30, and demanded immediate replenishment of the Reserve Fund. Debtor has failed to replenish the Reserve Fund as required under the terms of the Loan Agreement.

22. Debtor also defaulted under the terms of the Mortgage by failing to keep the Property free and clear of encumbrances. In the notice of default dated May 13, 2008, US Bank notified Debtor of multiple encumbrances that were filed of record against the Property without the consent of US Bank.

23.     Debtor is currently in default under the terms of the Loan Agreement and Mortgage for failure to make the full payments of principal and interest together with tax, insurance and replacement reserves due through September 15, 2008.  US Bank has made demands upon Debtor for payment in full of all amounts due and owing, and gave notice of acceleration on October 28, 2008.

24.     As of September 22, 2008, the Debtor had also failed to pay the following:

| Item: | Amount: |
| --- | --- |
| Taxes | $77,491.64 |
| Insurance | $11,336.49 |
| Repair and Replacement | $50,000.00 |
| Deficit in Reserve Fund | $104,981.64 |

25.     In addition to the amounts set forth in the preceding Paragraph, the Debtor is liable for interest, fees, costs, and other charges that will continue to accrue, including without limitation all of the Trustee's attorneys' fees incurred in connection with this matter.

**<u>Condition of the Property</u>**

26.     The atrocious conditions at the Property have been the subject of numerous newspaper articles and news-stories.  The stories tell of cockroaches, mold, leaking ceilings, drugs, violence and more than 700 hundred housing-code violations. Incredibly, this single property is allegedly responsible for approximately 15% of the City's police calls.

27.     Per the City's compliance orders, the housing-code violations include life-safety issues such as lack of functioning locks or security doors, failure to provide emergency lighting and the failure to provide fire extinguishers.

## Debtor's Consent Decree with City of Brooklyn Center

28.     Following numerous attempts to get the Debtor to correct the deficiencies noted at the Property, the City held a hearing to consider the revocation of the Property's rental license on October 1, 2007 as evidenced by the City Council meeting minutes**.**

29.      Following the hearing, the city council voted to revoke the rental license for the Property for a period of one year. The City also filed criminal charges against Jaweed and Ali.

30.     On or about January 22, 2008, the Debtor, Jaweed, Ali and the City entered into a Consent Decree ("Decree") to settle all litigation between the parties. Under the terms of the Decree, the Debtor agreed to bring the Property into compliance with the City's housing code and the City agreed to stay the revocation of the rental license for one year provided that the Debtor did not commit a material breach of the Decree.

31.     Despite the commitment of the Debtor to bring the Property into compliance, the condition of the Property further deteriorated. As outlined in the correspondence from the City to the Debtor dated June 3, 2008, utility bills were not paid and life-safety matters remained uncorrected. The City notified the Debtor that it was in material breach of the Decree.

32.     On September 28, 2008, the City filed a motion for enforcement of the Decree ("Enforcement Motion").  In the Enforcement Motion, the City alleged that the Debtor violated the Decree by, among other things, failing to pay its utility and bond fees, refusing to permit property inspections, failing to provide inspection records, failing to employ a qualified property manager, failing to maintain an evergreen account with a balance of $10,000 to be used for life-

safety problems, and failing to repair life-safety problems. The Court scheduled a hearing for December 2008 and has not yet issued an order on the motion.

## **Appointment of Receiver and Foreclosure of Mortgage**

33.     Concurrent with the City's efforts to revoke the rental license for the Property, U.S. Bank brought an action in Hennepin County District Court, seeking the appointment of a receiver to take control of the Property. Under the Indenture, U.S. Bank is authorized to exercise the rights of the lender under the loan agreement and mortgage.

34.     By Order dated September 24, 2008, the Hennepin County District Court granted U.S. Bank's motion and appointed Steven Scott ("Receiver") as the receiver for the Property.

35.     Despite the actions taken by the Receiver, the City is unwilling to consider issuing a temporary rental license to the Property because further repairs are needed. Without a rental license, additional units cannot be leased.

## **Current Physical Condition of the Property**

36.     Since appointment, the Receiver has prepared monthly reports and financial statements for the court's review.   Despite the Receiver's diligence in taking steps to improve security at the Property and to repair life and safety conditions, the units are still not able to pass inspections by either the City or other governmental entities. In December 2008, the Receiver received notice that several units would no longer be eligible to receive voucher assistance payments due to the fact that the units could not pass physical inspection.

## **Economic Condition of Property**

37.     As evidenced in the Receiver Reports, of the 252-units that make up the Property, only 141 units are currently occupied. Without a rental license, additional units cannot be leased.

The Property is currently operating at a net loss with costs exceeding revenue by more than $17,572.00 per month and this loss is without making any payments on debt service, or pre-petition amounts due and owing.

38. On January 7, 2009, the Receiver requested that US Bank advance over $226,000 to cover costs incurred in the operation of the Property. The Receiver was not able to pay these costs from rent collected.

39. Based upon the Receiver's best estimates, the following is the monthly operating expenses and revenue, not including debt service, pre-petition debts, or amounts paid by US Bank:

### Center Pointe Apartments Monthly Expenses

| | | |
|---|---|---|
| Xcel - Electric | $6,000.00 | |
| Center Pointe Energy - Gas | $17,000.00 | |
| City of Brooklyn Center - Water | $16,000.00 | |
| TDS & VISI - Telephone & Internet | $300.00 | |
| Allied Waste - Rubbish | $3,200.00 | |
| TLC - Plowing & Lawn Care | $2,475.00 | |
| North Sanitary - Salt | $600.00 | |
| Security | $11,780.00 | |
| Insurance | Paid by US Bank | |
| Payroll-Maintenance | $23,000.00 | |
| Cleaning Castle - Cleaning common areas | $5,000.00 | (2x per week) |
| Steven Scott Mgmt - Mgmt. Fee | $12,500.00 | |
| Real Estate Taxes | $10,474.00 | |

**Total Estimated Monthly Expenses**     **$108,329.00**

### Center Pointe Apartments Monthly Revenue

| | |
|---|---|
| Rent | $81,868.00 |
| Subsidy | $12,709.00 |
| Subsidy not being paid per month | ($3,721.00) |
| Garage Rent | $550.00 |

| | |
|---|---|
| Employee Rent Credit | ($649.00) |
| **Total Monthly Revenue** | **$90,757.00** |
| **Monthly Shortfall** | **($17,572.00)** |

40.     Importantly, the monthly expenses detailed above relate solely to occupied units, and does not include expenses for units that must be incurred in order to repair vacant units in order to meet the City's requirements for a license.

41.     The Property cannot operate based on current cash flow. The income is not sufficient to pay even minimal obligations for the Property. Real estate taxes payable in 2009 equal $101,784.40 and according to the Report of Receiver dated January 16, 2009, "[t]he property does not have sufficient funds…to pay all of its obligations, and thus various utility bills and other vendors have not been paid to date."

**Other Properties owned by Jaweed and Ali**

42.     Jaweed and Ali have a history of failing to properly maintain residential rental units and have been subject to license revocation actions in Minneapolis, Robbinsdale, Fridley, Columbia Heights and New Brighton as evidenced by the various news reports and city council minutes.

43.     In a situation similar to this one, Jaweed attempted to avoid foreclosure of a 60-unit apartment complex in Rochester, Minnesota by filing for bankruptcy in 2007. At the time, he was the Chief Manager of Rochester Service Corp., LLC, a Minnesota limited liability company ("Rochester Service Corp."). Rochester Service Corp owned a 60-unit apartment complex known as Trail Ridge Apartments. Minnwest Bank held a mortgage for approximately $2,890,000 on the Trail Ridge Apartment property.

44. The City of Rochester cited Rochester Service Corp. for fire-code violations and cockroach infestations. In addition to failing to maintain the property, Rochester Service Corp. defaulted under the terms of its mortgage by, among other things, failing to make payments of principal and interest on the loan secured by the mortgage, by failing to pay real estate taxes for the property, by allowing mechanics liens to attach to the property. In 2007, on the eve of foreclosure, Rochester Service Corp. filed for bankruptcy protection. A record of the bankruptcy proceeding can be found in Bankruptcy Court File BKY 07-32664 NCD 11.

**<u>Debtor's Lack of Authority to File</u>**

45. The Debtor is a limited partnership organized under the law of Minnesota. Pursuant to Debtor's Third Amended and Restate Partnership Agreement, dated as of June 2, 2003, the general partner of the Debtor is Brooklyn Center Leased Housing Associates LLC ("General Partner"), the investor partner is AMTAX Holdings 236, LLC ("Investor Partner"), and the special limited partners are Protech 2003-B, LLC and Brooklyn Center LP Interest, LLC (the "Agreement of Limited Partnership.")  In turn, Wentwood AMTAX Middle, Inc. is the manager of the Investor Partner ("Investor Partner Manager").

46. The Agreement of Limited Partnership contains provisions outlining the powers of the partners.  Regarding the authority to file a bankruptcy petition, the Agreement of Limited Partnership states:

> [t]he General Partner shall not have any authority to do any of the following acts without the Consent of the Investor Partner and any Requisite Approvals: … (8) to cause the Partnership to commence a proceeding seeking any decree, relief, order or appointment in respect to the Partnership under the federal bankruptcy laws, as now or hereafter constituted, or under any other federal or state bankruptcy, insolvency or similar law … .

(Agreement of Limited Partnership, § 7.1(B)(8).)  Further, the consent of the Investor Partner means "the prior <u>written</u> consent or approval of the Investor Partner."  (Agreement of Limited

Partnership, Art. I, p. 5., emphasis added)  Accordingly, under the terms of the Agreement of Limited Partnership, General Partner does not have the authority to file a bankruptcy petition on behalf of the limited partnership unless the Investor Partner has consented to the filing in writing.

47.     The Resolutions attached to the Petition are executed by the General Partner of the Debtor and do not reference the consent of the Investor Partner.

48.     In a Letter dated February 2, 2009, from the Investor Partner to the General Partner of the Debtor, the Investor Partner provides that it has not, and will not provide consent to the filing of the Petition.

**REQUEST FOR RELIEF**

**Expedited Relief**

49.     This Motion has been filed under Local Rule 9006-1(e) seeking expedited relief. As demonstrated above, the Debtor has already proven to the City and The Hennepin County District Court that it cannot manage the Property.  In fact, the Debtor's neglect of the Property has already significantly diminished its value because the Receiver cannot generate sufficient cash flow to pay monthly expenses from the Property directly related to the Debtor's serious and ongoing license problems with the City.  As a result, the Debtor cannot be allowed to regain possession of the Property currently in held by the Receiver.

50.     Section 543 of the Bankruptcy Code provides in part that a custodian (including a receiver) shall deliver to a debtor in possession any property of the debtor held by such custodian "on the date such custodian acquires knowledge of the commencement of the case". 11 U.S.C. § 543(b).  Because it is essential for the continued viability of the Property that the Receiver

remain in place, US Bank seeks expedited relief in order that the Receiver may continue to manage the Property notwithstanding the immediate turnover requirements of Section § 543(b).

51.     Moreover, based upon the apparent lack of authority of the Debtor to file this case, US Bank requests expedited relief to have the case dismissed.  Based upon the Debtor's own Agreement of Limited Partnership, the General Partner did not have authority to file the Petition on January 29, 2009.  The General Partner needed the written consent of the Investment Partner, which it failed to secure, and which consent the Investor Partner has informed the General Partner it will not provide.

## **General Relief**

52.     Pursuant to 11 U.S.C. § 301, US Bank requests that the Court dismiss the above-captioned case (the "Case") on the basis that the Debtor lacks the requisite corporate authority to commence the Case.

53.     To the extent the Court does not dismiss the Case immediately, US Bank requests that the Receiver be excused from compliance with the turnover provisions of 11 U.S.C. § 543(a)-(c), and that the Receiver be entitled to use the rents and other proceeds from the Property to continue the Receiver's preservation and management of the Property as allowed under 11 U.S.C. § 543(a).

54.     Also, to the extent the Court does not dismiss the Case immediately, pursuant to 11 U.S.C. § 362, US Bank requests relief from the automatic stay to exercise its rights and remedies under the Loan Documents and applicable law as it relates to the Property as US Bank is entitled to relief under 11 U.S.C. § 362(d)(1) in that US Bank's interest in the Property is not adequately protected.

## Reasons for Granting Relief

55.     In accordance with Local Rule 9013-2(a), this Motion is accompanied by a memorandum of law, a proposed order and proof of service. The reasons for granting the requested relief are set forth in the memorandum of law.

## Notice of Witnesses

56.     Pursuant to Local Rule 9013-2(c), US Bank gives notice that it may, if necessary, call Steven Schachtman of Steven Scott Management, Inc., 5402 Parkdale Drive, Suite 200, St. Louis Park, MN 55416, to testify regarding the current state of the Property, its prior management, and its current expenses and cash requirements.

WHEREFORE, US Bank, by and through its duly authorized and undersigned attorneys, requests that the Court enter an order:

A.      Granting expedited relief;

B.      Dismissing the Case;

C.      Alternatively, (1) excusing the Receiver from complying with the turnover provision of 11 U.S.C. § 543, and allowing the Receiver to use the rents and proceeds from the Property to preserve such Property; and (2) granting US Bank relief from the automatic stay to proceed with all remedies allowed by law, equity or contract against the Property; and

D.      Granting such other and further relief as the Court may deem just and equitable.

Dated:  February 2, 2009          OPPENHEIMER WOLFF & DONNELLY LLP

By:   */s/ David B. Galle*
     Steven W. Meyer (#160313)
     Michael D. Zalk (#141744)
     David B. Galle (#311303)
     Rebecca G. Sluss (#387963)
3300 Plaza VII
45 South Seventh Street
Minneapolis, Minnesota 55402
Telephone:    (612) 607-7000
Facsimile:    (612) 607-7100

**ATTORNEYS FOR US BANK NATIONAL ASSOCIATION**

2632583.03
30.1056

In re:

Brooklyn Center Leased Housing Assoc LP.

　　　　　　Debtor.

Bky. No. 09-40476 (RJK)
Chapter 11 Case

## MEMORANDUM OF LAW IN SUPPORT OF MOTION (1) TO DISMISS CASE; (2) FOR EXCUSE OF STATE COURT APPOINTED RECEIVER TO COMPLY WITH TURNOVER REQUIREMENTS UNDER 11 U.S.C. § 543(a)-(c); AND FOR RELIEF FROM STAY

### Introduction

1.　　US Bank National Association ("US Bank"), as Trustee under that certain Indenture of Trust, dated June 1, 1995, between US Bank (fka First Trust National Association) and the City of Brooklyn Center, Minnesota (the "City"), relating to the City's Multifamily Housing Refunding Revenue Bonds (Four Courts Apartments Project), Series 1995A (the "Indenture") submits this memorandum of law in support of its Motion: (1) to Dismiss Case; (2) to Excuse Compliance with 11 U.S.C. § 543(a)-(c); and (3) for Relief from Stay (the "Motion").

2.　　Specifically, for the reasons set forth herein, US Bank requests that the Court dismiss this case because Brooklyn Center Leased Housing Associates Limited Partnership (the "Debtor") lacked the requisite corporate authority to file its petition (the "Petition"). Alternatively, if the Court does not immediately dismiss the case, US Bank requests that the Receiver be excused from complying with the turnover provisions of 11 U.S.C. § 543 pursuant to 11 U.S.C. § 543(d), and be granted authority to use the rents and proceeds of the Property to

preserve and maintain the Property. Moreover, because US Bank is not adequately protected, cause exists to grant US Bank relief from the stay under 11 U.S.C. § 362(d)(1).

3. The facts supporting this Motion are set forth under the heading Statement of Facts, in paragraphs 6 through 48 of US Bank's Motion and are incorporated by reference in this memorandum of law. Terms defined in the Motion have the same meanings as used herein.

## ARGUMENT

### DISMISSAL

4. An entity that files a voluntary petition under 11 U.S.C. § 301 must have the requisite authority to do so and file proof of said authority with the petition, or the bankruptcy court will have no alternative but to dismiss the case. Price v. Gurney, 324 U.S. 100, 106 (1945); Keenihan v. Heritage Press, Inc., 19 F.3d 1255, (8th Cir. 1994)(citing Price, 324 U.S. at 106); Local Rule 1008-1. The United States Supreme Court provides that if the bankruptcy court "finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the [bankruptcy] proceedings, it has no alternative but to dismiss the petition." Price, 324 U.S. at 106. The rule in Price applies to all corporate entities, including partnerships. See, e.g., Jolly v. Pittore, 170 B.R. 793, 797 (S.D.N.Y. 1994)(applying Price to a partnership). Under Minnesota limited partnership law, the authority of the partners is addressed in the applicable partnership agreement. Here, the partnership agreement requires that the "Investor Partner" must provide written consent to the general partner in order for the general partner to commence a bankruptcy petition. However, based upon the resolutions attached to the Petition filed by the Debtor's General Partner, and a letter dated February 2, 2009 from the Investor Partner to the General Partner, it is clear that the Investor Partner did not consent, and therefore, the above-captioned case must be dismissed.

5.      Limited partnerships in Minnesota are governed by the Uniform Limited Partnership Act of 2001, codified as Chapter 321 of the Minnesota Statutes.  Minnesota Statutes Section 321.0110 provides that a partnership agreement governs relations among the partners and between the partners and the partnership.  Minn. Stat. § 321.0110(a) (2008).  Only if a partnership agreement is silent on an issue, then the provisions of the Uniform Limited Partnership Act of 2001 provides the applicable rules.  Id.

6.      The Debtor is a limited partnership organized under the law of Minnesota. Pursuant to Debtor's Third Amended and Restate Partnership Agreement, dated as of June 2, 2003 (the "Agreement of Limited Partnership"), the general partner of the Debtor is Brooklyn Center Leased Housing Associates LLC[1] ("General Partner"), the investor partner is AMTAX Holdings 236, LLC ("Investor Partner"), and the special limited partners are Protech 2003-B, LLC and Brooklyn Center LP Interest, LLC.  In turn, Wentwood AMTAX Middle, Inc. is the manager of the Investor Partner ("Investor Partner Manager").

7.      The Agreement of Limited Partnership contains provisions outlining the powers of the partners.  Regarding the authority to file a bankruptcy petition, the Agreement of Limited Partnership states:

> [t]he General Partner shall not have any authority to do any of the following acts without the Consent of the Investor Partner and any Requisite Approvals: … (8) to cause the Partnership to commence a proceeding seeking any decree, relief, order or appointment in respect to the Partnership under the federal bankruptcy laws, as now or hereafter constituted, or under any other federal or state bankruptcy, insolvency or similar law … .

(Agreement of Limited Partnership, § 7.1(B)(8).)  Further, the consent of the Investor Partner means "the prior written consent or approval of the Investor Partner."  (Agreement of Limited

---

[1]     The agreement provides that it is Brooklyn Center Leased Housing Associates I, LLC, but that appears to be a clerical error, and not a basis for this Motion.

Partnership, Art. I, p. 5., emphasis added)  Accordingly, under the terms of the Agreement of Limited Partnership, the General Partner does not have the authority to file a bankruptcy petition on behalf of the limited partnership unless the Investor Partner has consented to the filing in writing.

8.      On January 29, 2009, the Debtor filed its Chapter 11 Petition.  Attached to the Petition is proof of authority ("Proof of Authority") required by rule 1008-1 of the Local Rules of the United States Bankruptcy Court for the District of Minnesota.  According to the Proof of Authority, the Debtor's General Partner declares that it is in the Debtor's best interest to file the Petition and that the Debtor's Chief Manger is authorized to perform all the acts necessary in connection with this bankruptcy case.  The Proof of Authority is signed solely by the manager of the General Partner.

9.      As the Debtor's Agreement of Limited Partnership contains provisions governing the authority of the partners to commence a bankruptcy proceeding, the agreement governs under Minnesota law.  Section 7.1(B)(8) specifically requires the prior written consent of the Investor Partner before the Debtor can commence a bankruptcy proceeding on behalf of the Debtor.  In this case, the Proof of Authority is signed only by the General Partner.  There is no mention of the Investor Partner's consent to the commencement of this bankruptcy proceeding, nor did the Investor Partner sign the Proof of Authority.  Moreover, the Investment Partner delivered a Letter dated February 2, 2009 to the General Partner stating that the General Partner does not have authority under the Agreement of Limited Partnership to commence this case.  Because the Debtor did not obtain the requisite written authority to file its Petition to commence this bankruptcy proceeding, the Debtor's Petition must be dismissed.

**EXCUSE FROM COMPLIANCE WITH 11 U.S.C. § 543**

10.     In the event that the Court does not immediately dismiss this case, US Bank requests that the Court allow the Receiver to continue in possession of the Property.  In general, the filing of a Chapter 11 petition requires that a "custodian" such as a receiver to deliver the debtor's property back to the debtor-in-possession and file an accounting with the bankruptcy court under 11 U.S.C. § 543 once the custodian becomes aware of the case.  The Bankruptcy Code provides, however, that the court shall excuse a receiver or custodian after notice and hearing from compliance with the turnover provisions of Section 543 "if the interests of creditors . . . would be better served by permitting the custodian to continue in possession, custody or control of such property."  11 U.S.C. § 543(d)(1); See In re KCC-Fund V Ltd., 96 B.R. 237, 239 (Bankr. W.D. Mo. 1989)(holding in favor of a secured party's motion for order excusing receiver of apartment buildings from compliance with turnover provisions of Section 543 because debtor mismanaged property).  Here it is in the "best interests of creditors" that the Receiver continues in possession the Property and be allowed to use the rents derived from the Property for maintaining and operating the Property.[2]

11.     In determining whether it is in the best interests of creditors that a receiver continue to maintain property under § 543(d), the Court must inquire into the Debtor's conduct as it relates to the Property.  See In re KCC-Fund V Ltd., 96 B.R. at 240.  In determining whether there is cause for an exception under § 543 based upon such conduct, courts look at the following factors:  (1) the debtor's likelihood of reorganization; (2) the probability that funds required for reorganization will be available; and (3) whether there has been mismanagement of the property

---

[2]     The Debtor has indicated that they would only agree to the Property being managed by a receiver so long as the current Receiver was replaced.  Ignoring the issue of whether this Court has authority to place a different receiver over the Debtor's Property, the Debtor has offered no basis for claiming that the Receiver has not

by the debtor.  See In re Constable Plaza Associates, LP, 125 B.R. 98, 103 (Bankr. S.D.N.Y. 1991); In re California Gardens Apts. Ltd., 130 B.R. 504, 516 (Bankr. S.D. Ohio 1991).  Here all the factors point to granting the Receiver an exception under 11 U.S.C. § 543(d).  As demonstrated by the Affidavit of Steven Schachtman, the Property is unable to generate positive cashflow, and is still suffering problems rooted in the Debtor's prior mismanagement.

12.     In fact, just prior to the bankruptcy filing, the Receiver filed a request with the Minnesota District Court overseeing the receivership requesting an advance of $226,174.97 (in addition to rental receipts) for the purpose of paying past due expenses.  Moreover, the Receiver has stated that the current rental receipts on a monthly basis will leave a shortfall of approximately $17,572.00 each month, not including debt service, utility deposits, or additional repairs required by the City.  In addition, the Property will have a real estate tax payment due on May 15, yet the Debtor has no prospect of escrowing funds for that purpose based upon the current cashflow of the Property.  Also, it is unlikely that the rental receipts of the Property will have any chance of increasing over the next few months as the Debtor is unable to secure new tenants because of the Debtor's failure to secure a renewal of its rental license in November 2008, based upon its ongoing dispute with the City.

13.     On January 22, 2008, the Debtor entered into a Consent Decree with the City related to certain violations related to the Property.  Because of the Debtor's failure to abide by the terms of the Consent Decree, including the failure to pay utilities (including Xcel Energy and CentrPoint Energy), termination of its property management agreement, and failure to provide security and numerous repairs, the City initiated a license revocation proceeding, and is unwilling to renew the Debtor's license.

---

performed well, and in fact, US Bank is concerned that cost in time and resources for educating a new receiver on the issues related to the Property would be prohibitive.

14. Based on the Debtor's own mismanagement, the Property has insufficient cashflow and simply cannot contribute to a successful reorganization under the first and second factors. Because of a lack of a rental license, under City ordinance the Debtor cannot rent its vacant apartments to new tenants, and as tenants vacate, those tenants cannot be replaced with new tenants. See Brooklyn Center Ordinance 12-910. In addition, such cashflow concerns do not even take into consideration the numerous repair violations of City code that the Receiver has been working diligently on rectifying with the City since October 2008.

15. Perhaps most importantly to a determination under § 543(d) is the third factor, which will excuse a receiver from turnover requirements where there is evidence of prior mismanagement by the debtor. See In re KCC-Fund V 96 B.R. at 240 (receiver excused from turnover requirements where properties were not maintained and sadly neglected). In this case there is more than ample evidence that the Debtor has seriously mismanaged the Property.

16. In the In re KCC-Fund V case, the debtor owned three apartment complexes which had been "sadly neglected." Just as in the case here, there were numerous hazardous conditions that required maintenance which the Debtor did not provide, necessitating the entry of the Consent Decree, and the City's license revocation proceedings. Perhaps the most egregious act of mismanagement by the Debtor was its failure to secure a continuation of its rental license in November 2008, effectively tying the hands of the Receiver and any other party including the Debtor, from increasing the occupancy rate of the Property. Moreover, just as in the KCC-Fund V case, the Receiver here has done an excellent job of working with the City on remedying the maintenance issues and other defects that the City has provided notice to the Debtor of on numerous occasions. Such prior mismanagement should not be excused, and the Court should

allow the Receiver to continue its possession of the Property and allow the Receiver to use proceeds of the Property for the preservation and maintenance of the Property under § 543(a).

## RELIEF FROM THE AUTOMATIC STAY

17.     A secured creditor is entitled to relief from the automatic stay if cause exists including lack of adequate protection.  Specifically, 11 U.S.C. § 362(d)(1) provides as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the [automatic] stay ..., such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1)    for cause, including the lack of adequate protection of an interest in property of such party in interest;

18.     US Bank is entitled to relief from stay if cause exists.  Cause can include, but is not limited to, lack of adequate protection.  11 U.S.C. § 362(d)(1).  Lack of adequate protection includes the situation where the subject property is declining in value based upon the Debtor's lack of maintenance.  See e.g., In re Marion St. P'ship., 108 B.R. 218, 224 (Bankr. D. Minn. 1989)(requiring that in order to receive relief from the stay, the creditor demonstrate that the debtor is unable to pay operating expenses and taxes for an apartment building from cash flow, and that the Debtor was not managing the property).  In this case, US Bank is not adequately protected based upon the diminution of value in the Property, and cause for relief from stay exists for a number of reasons.

19.     As asserted above, the Property has been neglected and is in need of repairs and maintenance, therefore requiring the Receiver.  Moreover, the state of the Property has prompted the City to commence an action to revoke the Debtor's rental license.  The Debtor's failure to provide for repairs and maintenance will result in further diminution in value.  The inability of the Debtor to properly maintain the Property and stabilize its value further diminishes its value. The decrease in value will be even greater if the Debtor takes possession of the Property from the

Receiver. Unlike the <u>Marion Street Partnership</u> case which involved an apartment building where the Debtor was able to demonstrate that (1) the property was being fully maintained, (2) cash flow was sufficient to pay operating expenses and taxes, and (3) the building was nearly 100% occupied, US Bank has demonstrated just the opposite. The Debtor failed to maintain the Property as evidenced by the problems with the City and its license revocation hearing. The Debtor cannot pay operating expenses or taxes from cash flow, and the Debtor cannot fully occupy the building because of its license problems. However, the automatic stay precludes US Bank from continuing its action to foreclose[3] or take other actions to protect the Property from any further diminution in value. US Bank needs relief from stay in order to protect the value of its collateral.

---

[3] A Sheriff's Sale was scheduled for January 30, 2009, prompting this Case.

WHEREFORE, US Bank, by and through its duly authorized and undersigned attorneys, requests that the Court enter an order:

A.     Dismissing this Case;

B.     Relieving the Receiver from the turnover requirements of 11 U.S.C. § 543, and allowing the Receiver to use rents and proceeds for the preservation of the Property;

C.     Granting US Bank relief from the automatic stay to proceed with all remedies allowed by law, equity or contract against all assets of the Property including but not limited to the continuation of the foreclosure which will extinguish the Debtor's interest in the Property; and

D.     Such other and further relief as the Court may deem just and equitable.

Dated:  February 2, 2009          OPPENHEIMER WOLFF & DONNELLY LLP


By:_____ */s/ David B. Galle*_____
     Steven W. Meyer (#160313)
     Michael D. Zalk (#141744)
     David B. Galle (#311303)
     Rebecca G. Sluss (#387963)
3300 Plaza VII
45 South Seventh Street
Minneapolis, Minnesota 55402
Telephone:     (612) 607-7000
Facsimile:     (612) 607-7100

**ATTORNEYS FOR US BANK NATIONAL ASSOCIATION**

2632603.02
30.1056

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Brooklyn Center Leased Housing Associates Limited
Partnership,

              Debtor.

BKY Case No.: 09-40476

Chapter 11

## AFFIDAVIT OF DAVID B. GALLE

STATE OF MINNESOTA    )
                          ) ss.
COUNTY OF HENNEPIN   )

      David B. Galle, being first duly sworn on oath, states as follows:

1.     I am one of the attorneys representing US Bank National Association in the above-

captioned matter.

2.     Attached hereto is a true and correct copy of a Letter that I received via email from

Wentwood Capital Advisors, L.P. to Hyder Jaweed and Ashger Jaweed dated February 2, 2009.

David B. Galle

Subscribed and sworn to before me
this 2nd day of February, 2009.

Notary Public

CYNTHIA L. ELGREN
Notary Public-Minnesota
My Commission Expires Jan 31, 2013

## Galle, David B.

| | |
|---|---|
| **From:** | Brian Brandstetter [bbrandstetter@wentwood.com] |
| **Sent:** | Monday, February 02, 2009 3:53 PM |
| **To:** | Galle, David B. |
| **Subject:** | Brooklyn center bankruptcy |
| **Attachments:** | 20090202153424.pdf |

Mr. Galle:

Attached is the letter we discussed.

Brian J. Brandstetter
Assistant General Counsel
Wentwood Capital Advisors, LP
2551 River Park Plaza, Suite 220
Fort Worth, TX 76116
817/349-7345
817/377-2426 Fax
bbrandstetter@wentwood.com

This message is for the named person only. It contains confidential, proprietary or legally privileged information. No confidentiality or privilege is waived or lost by any mistransmission. If you receive this message in error, immediately delete it and all electronic copies, destroy any hard copies of it and notify the sender. You must not, directly or indirectly, use disclose, distribute, print, or copy any part of this message without Sender's authorization. This communication is not an intention by the Sender or the Sender's client or principal to conduct a transaction or make any agreement by electronic means. Nothing contained in this message or in any attachment shall satisfy the requirements for a writing, and nothing contained herein shall constitute a contract or electronic signature under the Electronic Signatures in Global and National Commerce Act, any version of the Uniform Electronic Transaction Act or any other statute.

# Wentwood Capital Advisors, L.P.

**Brian J. Brandstetter.**
Assistant General Counsel
bbrandstetter@wentwood.com
Direct Dial: 817-349-7345

February 2, 2009

Mr. Hyder Jaweed                                Via email Ajaweed@aol.com
Mr. Ashger Jaweed                               Via email Ajaweed@aol.com
3 Blue Spruce Court
North Oaks, MN  55127

Mr. Brendt Rusten                               Via email BRusten@dominiuminc.com
Dominium Development and Acquisitions
2355 Polaris Lane North, Suite 100
Plymouth, MN 55447

Re: Brooklyn Center Leased Housing Associates Limited Partnership bankruptcy filing

Dear Sirs:

I am writing this letter as a representative of AMTAX Holdings 236, LLC ("Investor Partner"), the Investor Partner of Brooklyn Center Leased Housing Associates Limited Partnership (the "Partnership"). As you know, a Wentwood affiliate is the representative of the Investor Partner. It has come to our attention that Brooklyn Center Leased Housing Associates, LLC ("General Partner"), the General Partner of the Partnership, filed a Petition for Relief in the United States Bankruptcy Court for the District of Minnesota placing the Partnership into bankruptcy.

Please be advised that Section 7.1 (B) (8) of the Third Amended and Restated Agreement of Limited Partnership of Brooklyn Center Leased Housing Associates Limited Partnership (the "LPA"), provides that the General Partner has no authority to cause the Partnership to commence a proceeding seeking relief under any Federal or State bankruptcy laws, without the consent of the Investor Partner. This is to advise you that the Investor Partner was not asked to consent, has not consented, and does not consent, to the General Partner's action in commencing the bankruptcy proceeding. The Investor Partner demands that the General Partner immediately dismiss the bankruptcy proceeding, which it understands is docketed as Bky. No. 09-40476 (RJK) Chapter 11 Case.

This will further advise you that the Investor Partner intends to hold the General Partner and any applicable guarantors responsible for any harm or damages to it resulting from the filing of the bankruptcy proceeding.

If you have any questions regarding this correspondence, please feel free to contact me.

Sincerely,

Brian J. Brandstetter

BJB:gim

cc:

Todd Urness Via email turness@winthrop.com

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Brooklyn Center Leased Housing Associates Limited      BKY Case No.: 09-40476
Partnership,

        Debtor.                               Chapter 11

## ORDER

At Minneapolis, Minnesota, this 4th day of February 2009.

This case came before the Court on the Expedited Motion of U.S. Bank National Association (1) to Dismiss Case; (2) to Excuse Compliance with 11 U.S.C. § 543(a)-(c); and (3) for Relief from Stay (the "Motion"), and notice of the Motion having been given and opportunity for objection having been had at said hearing and the Court being fully advised,

IT IS HEREBY ORDERED:

     1.      The request to hear the Motion on an expedited basis is granted;

     2.      The above-captioned case is dismissed.

_____
Honorable Robert J. Kressel, Judge
United States Bankruptcy Court